I appreciate your willingness to accept the appointment. You may proceed when ready. It's always a pleasure for me to handle these cases in your court, so thank you for the appointment. My name is Craig Lambert from Little Rock, and I'm here on behalf of the appellant, James Daniels, in this habeas corpus case. This case involves the Sixth Amendment right to counsel of choice, and in a report and recommendation that I would consider one of the most well-reasoned and thoughtful reports, opinions that I've seen since I've been doing this work, the magistrate recommended that the Great Writ be granted on the ground that the Arkansas Court of Appeals decision involved an unreasonable application of Morris v. Slappy, and also was based on an unreasonable determination of the facts under 2254 D. 1 and 2. So then the district judge comes along, Judge Holmes, and reasons that I would consider to be quite specious and quite frankly intellectually dishonest, rejects the magistrate's recommendation. I want to start off and just talk about what happened at the trial court level. Mr. Daniels. Well, speaking of intellectual honesty, this Morris v. Slappy case, as I said, there was no constitutional violation in the case. There's some dicta that talks about how it would be a violation to deny a continuance for arbitrary or unreasoned bases, but how does that apply then under EDPA if the holding of the case was actually no violation? Can you unreasonably apply dicta? I think what the general standard that comes out of that case is the federal law that we're talking about is whether the trial court's actions were involving unreasonable insistence on expeditiousness in the face of a justifiable request for delay. It must be unreasonable and arbitrary, right? That's what the language from Morris v. Slappy. It has an and in there, unreasonable and arbitrary. Right. That's what the language is from Morris v. Slappy. My concern is that's not holding, though, of Morris v. Slappy as I read it. Morris v. Slappy held there was no violation. So I'm wondering what holding of the Supreme Court you say was unreasonably applied. I guess your answer is whatever Morris v. Slappy said you think is the clearly established law? That's correct. Right. I don't know that the actual decision going one way or another for the petitioner or the respondent in that case makes a difference. We're talking about what the law is that that case stands for. The holding is how the case comes out. You know the holding of the Unger case? I don't. This is an honest question. Unger is a 64 case. Unger v. Seraphine. Don't worry about it. We'll look it up. Proceed. Go ahead. I can tell you this. Most of the cases that the district judge relied upon, especially the cases that he cited, and I think Unger may have been one of those cases trying to say that Mr. Daniels wasn't diligent, involved defendants who requested a continuance on the day of trial. And a couple of those cases involved were situations where continuances had already been granted. And we'll hear the motion was renewed on the day of trial, right? Motion was made multiple times. Right. It was renewed again on the day of trial and several days before that and a month before that. And two months and a month before that. So what happened at the trial court? This is important, the timeline here. Mr. Daniels was arrested August 26 along with two other co-defendants. And they levied four very serious felony charges against him. Possession of meth with intent. Possession of marijuana with intent. First degree child endangerment. Attempted first degree battery on a police officer. Serious charges. Multiple defendants. Daniels facing a potential life sentence. He wasn't formally charged until September 14, 2010. His first appearance in circuit court, his plea in arraignment was October 12, 2010. And that's when this trial judge right off the bat announces he's going to fast track this case. And in my opinion for no good reason. Fast track this case. We're going to set it. We're going to set this case for December 14 for trial and I'm not going to grant any continuances. Well he said Jones is incarceration off the bat, right? He said that was his first reason that he gave was Daniels and Jones were in pretrial custody. And then it was pointed out to him that Daniels is not going to be getting out anyway. He's got a parole hold on him. But that didn't matter to the trial judge. That's where he starts in and tries to sort of force a guilty plea. He says if I were to stay I'd make a plea offer today. Let's make a deal. Be done with this case in two minutes. At this point was Jones still in the picture, wasn't he? And was there any information that he was in a similar situation having another hold on him? He did not have a hold on him but he had a bond that supposedly he couldn't make. He was in pretrial custody and was going to stay there. Does that answer your question? Okay. What's the problem with the district court's ruling? You started out pretty tough saying it was not only wrong but intellectually dishonest but I haven't heard what you say is wrong with it. First of all, the district court really ignored or discounted or misinterpreted most of the facts here that established the Sixth Amendment violation. All these things that this trial judge did. First of all, trying to force a guilty plea right off the bat. Trying to actively dissuade Mr. Daniels from exercising his Sixth Amendment right to counsel of choice. Telling him you've already got a great lawyer, public defender paid by the state. Why would you want to go and hire a lawyer? Telling him that he can't even afford to hire a lawyer in the first place. A thousand dollars is not going to cut it. Even though he had already paid a thousand dollars to Mr. West who decided to bail out on him. Judge Holmes also talked about these charges almost like it was a shoplifting case or something. These were serious charges and the case was a lot more complex than the district court would have us believe. Multiple serious felony charges facing a potential life sentence, multiple defendants, possible pre-trial motions that could be filed, a motion to suppress the evidence, a motion to suppress Mr. Daniels' statement. Mr. Daniels was charged as a habitual offender. Also, Mr. Daniels was housed at the Bricky's Inn, which was several hours away over close to Memphis. Long, long, long way from the court, which would make it difficult for a lawyer to even really communicate with him. That's a real problem Judge Holmes talked about. Any lawyer would be able to take this case and be ready for trial in one month. That's not what he said. He said that Bradshaw herself got ready in one month and that West was willing to do it but for the conflict with the police officer with one month to go. So he said that tends to show that one month was enough time. Well, first of all, Ms. Bradshaw said she wasn't ready. She thought Mr. West was handling the case and Mr. West had two months, not one month. So when he was hired, he was hired two days after plea and arraignment. That would have given him two months to prepare the case. He just decided to bail out on Daniels on November 15th. You mean you think he'd been working on the case for a month before the November 15 hearing? I don't think he'd been working on the case. I think Daniels had a right to think that he was working on the case. My point is that was Judge Holmes' reasoning that he hadn't been working on the case. There was one month left and the only reason he didn't take the case was the situation with the police officer. I don't know. I think that involves some speculation to be honest with you. But Judge Holmes also said that quote the chronology recited by the... What page are you on of his order? I'm sorry? Are you quoting from a page of his order? I am. Tell me the page if you've got it. If you don't, go ahead. No, don't worry if you don't have it. He said that the chronology recited by the Arkansas Court of Appeals is substantially accurate, unquote. Although Daniels argues that the decision was based on an unreasonable determination of the facts, he does not specify any portion of the determination of the facts that was inaccurate, unquote. That's because the Arkansas Court of Appeals ignored all of the facts that are relevant to the analysis. And is that your argument on the second prong that is it an omission argument that they simply overlooked or that they misstated the facts? You're talking about the Arkansas Court of Appeals now? Correct. I don't know that they overlooked. I would say ignored would be perhaps a better word. They just didn't mention. They just picked and chose a few facts or really conclusions almost and ignored all of these other facts that strongly support the Holmes decision. Back to the Arkansas Court of Appeals, they say they've got a chronology. I'm looking at, this is page 5 of their slip opinion. They say they have a chronology and it's short. I get it. Two paragraphs. Man, three paragraphs. But it's not too bad. Little short sentences with facts in them. Well, what they ignored is that all of the dialogue between what happened at the October 12th hearing and the November 15th hearing. Just coming right out of the gate and setting this case for trial 62 days after plea and arraignment and making it clear that that date was carved in stone. Trying to force a plea right off the bat. Repeatedly trying to persuade Daniels not to exercise his right to counsel of choice. Talking about the public defender being an excellent lawyer. Telling Mr. Daniels you're not going to be able to afford a lawyer anyway. Telling Mr. Daniels that this case may well be about how much time you're going to get in ADC and not about the actual question of guilt or innocence. Refusing to continue the case after Mr. Daniels got blindsided on November 15th when Mr. West bailed out on him and he only had a month before the trial date. Mr. Lambert, do you want to save any time for rebuttal or do you wish to continue? I do. We'll hear from your counterpart. Ms. Gassaway, we'll hear from you. Say there's some seats in the very front if you fellows want to sit down. We don't mind if you want to sit off to the side here in the front row. You may proceed. I'm Brooke Gassaway with the Arkansas Attorney General's Office and I represent Wendy Kelly. First I want to start off by saying that appellant never identified counsel of choice that he wished to retain. Therefore there can be no deprivation of his right to counsel of choice because of his choice of counsel he was prevented from using. In Gonzalez-Lopez, the Supreme Court noted that the deprivation of choice of counsel is only complete once a defendant is deprived or prevented from using that counsel. Your verb was identified. Mr. West was at a hearing. Your Honor, Mr. West never agreed and he wasn't willing to take the case. Under choice of counsel, you do not have a right to an attorney who is not willing to represent you or who you cannot afford or the other must be a member of the bar and no conflict of interest. Mr. West says there will be no continuances of the December trial date and no attorneys willing to take the case on that short time frame. How is the defendant supposed to produce or identify an attorney of choice? Well, Your Honor, Supreme Court case law is clear. There is no Supreme Court case holding that a deprivation of this right can occur without first identifying counsel. An appellant had four months to find counsel and he never did. He never told the trial court, hey, this is who I want to represent me. This is who is willing to represent me and the trial court never deprived him of that. In each case in the Supreme Court in which talks about the choice of counsel right, in each of those cases the defendant had identified the counsel who he wished to be retained. In Gonzales-Lopez, he sought to be represented by an out-of-state attorney. In Wheat, the defendant wanted to be represented by the attorney who other co-defendants were represented by. And then in Slappy, he wanted to be represented by the original public defender appointed to his case. And in each of those cases, the common factor was that the defendants had identified counsel. And again here, appellant never did that. And without first identifying a counsel, the trial court cannot deprive him of his right. The request for extension of time to identify counsel is inconsequential? Your Honor, under clearly established law, there is no right. The only right is a right to counsel of choice once you have found counsel who is willing and able to represent you. And under AEDPA, the state court's decision cannot be an unreasonable application of clearly established law if there's not clearly established law giving a defendant the right to go seek counsel once he already has an appointed counsel. And again, in this case, there is no deprivation of his right to counsel of choice. But even assuming that the case was expanded, it can't under AEDPA. But if we were to expand it to include this right to go shop for counsel, then the Court of Appeals decision was still not unreasonable. You agree the prejudice part of it is bad, right? Oh, yes, Your Honor. But luckily, the Court of Appeals also held that there was no abuse of discretion. So is it your view that those are two alternative holdings in the state court? Yes. And under the ultimate legal determination that the trial court did not abuse its discretion, that legal conclusion is given great deference under AEDPA. And it was not so objectively unreasonable that no fair-minded jurist could disagree. The trial court balanced the right of the defendant's choice of counsel with other legitimate considerations in front of him, such as the fact that the co-defendant, Mr. Jones, was in jail and could not make bail. And that was the single most important reason the trial court continuously stated at both the October 12th hearing and the November 15th hearing. But that's not any of the December reasons, right, given by the judge? No, Your Honor. By the day of trial on December 16th, the co-defendant had not officially pled yet, but he was in the process of plea negotiations. And even as late as December 10, right, there's no mention on December 10 about Jones? There's no mention one way or the other. We are unsure if Jones was still part of the case at that time or not. But we know by the date of trial that Jones was not going to trial with the appellant on that date. And he pled guilty in February, right? I think that the sentencing order was filed sometime in January for Jones. Maybe January 23rd or 24th. But when the trial court was denying appellant's motion for continuances at the November hearing, the court did reiterate the fact that Jones was in jail and could not make bond. Another reason the trial court made his decision is trial courts are given wide latitude in scheduling trials. They must balance the defendant's request against the needs of fairness and the demands of its docket. And other than Jones, what other demands of the docket, as you describe it, are listed in those hearings? The trial court gets to control its docket and it stated that the court's next trial date, if it were to continue the December 15th trial, the next trial date wasn't until February 8th. And we don't know how congested the docket was. So that's not part of the record? No, Your Honor. And then it was the trial court's practice not to grant last minute continuances for new counsel to get prepared. And was there a definition of last minute? Is that your phrase? Or is that in the record? Your Honor, that was my phrase. I apologize. The court noted that at the October 12th hearing that it would not, this is not a direct quote, but it said that it would not grant a continuance for new counsel to get prepared for the case. And so those are the two spots that you've identified that are docket management comments? Yes, Your Honor. And the fact that if the trial court granted a continuance, it wasn't continuing just one case, it would have to continue two cases because Jones and Appellant were to be tried together. And again, and importantly, Jones, the co-defendant, was sitting in jail and he never joined in on these continuances that Appellant was making. And it was very, a concern of the trial court that Jones was sitting in jail unnecessarily, I think is how the trial court put it. Another factor that the trial court considered in making this, in denying his motion to continuance, was the complexity of the case. The trial court felt based on the state court's description of the case that it was a relatively simple case, one that could easily be tried in a month if new counsel came on. And in fact, the public defender Bradshaw was actually able to prepare completely for the case in one month after. How much did the   a case that was brought to the trial court a few minutes ago. It seems to be a strong theme in that opinion, doesn't it? Your Honor, they did speak much, a lot about prejudice. However, in this court, under AEDPA, we look at the ultimate legal conclusion and not the stated reasons therein, the decision. And the ultimate legal conclusion was that the trial court did not abuse its discretion. And this court looks if there was any reasonable arguments which support that legal conclusion. And in the record, there are. Again, Jones sitting in jail. The factually simple case. I'm looking at the Arkansas appellate opinion. There is this sentence, though, and this is what you have to rely on. The trial judge made clear from the outset that no continuance would be granted on the basis of a change of attorneys. That's got to be unconstitutional, right? The judge can't begin a case by saying we're not going to have any continuance of the case on the basis of a change of attorneys. No, don't you have to weigh? No, wait, you've been telling us the law. You've got to weigh, right? The Supreme Court says. You have to weigh the public's interest against the right to counsel. You can't say they'll never. That says never. The trial judge made clear from the outset no continuance on the basis of change of attorneys. That's unconstitutional, right? Well, it's not an unconstitutional deprivation of a Sixth Amendment right to case law saying that a deprivation of your choice of counsel can occur without identifying counsel. The very cases you're relying on say that it must be unreasoning and arbitrary. Isn't that unreasoning and arbitrary to say from the outset we're never going to give a continuance? Surely you'd agree with that. The trial judges of all the state of Missouri or Arkansas can't have an order saying we're never going to have a continuance on account of attorneys, change of attorneys. Surely that's not constitutional. Your Honor, if that was the only facts in the record, it may be different. But again, here the state of reason the trial court gave, the trial court fast tracked the case because Jones was sitting in jail and couldn't make bail. The trial court felt the case was simple and a new attorney would be able to prepare in a month. And also again, trial courts have wide discretion and latitude in scheduling trials and in granting continuances. And all these reasons show that the trial court's decision wasn't unreasoning. But again, we are looking at the Court of Appeals ultimate legal conclusion. Under AEDPA, that is what the focus is on. And so its decision was not objectively unreasonable. And under AEDPA again, it's such a deferential standard that the district court's order should be affirmed in saying that it wasn't objectively unreasonable. All right. Thank you for your argument. Thank you. Mr. Lambert, we'll hear from you in rebuttal. I wanted to clear one thing up. I'm not sure if I heard this right, but it is in the record the trial judge did say that he had a February trial date available. That's part of the dialogue at the November 15th hearing in this case. Also, regarding Co-Defendant Jones, I'm glad that this has been talked about because I would suggest to you this is a big red herring in this case. Jones, all this talk about the concern over Jones' pretrial incarceration, Jones didn't go to trial with Daniels. Daniels was forced to trial on December 16th. Jones' case was put off. His case wasn't disposed of until a month later in January. I understand that, but isn't it true at the time of the October-November hearings the trial judge was really concerned about Jones? Well, he said he was. You're right. But his actions speak louder than his words. If he was that concerned about Jones, he would have forced him to an early court date along with Daniels. Why did he not do that? Why did he let Jones stay in custody if he was that concerned about his pretrial incarceration? Why was that case not disposed of on December 16th along with Daniels? There's kind of a gap in the record on that because the motion for severance was filed by Jones' counsel and denied. They should have gone to trial together. He had rejected a plea offer. They should have gone to trial together, but somehow his case was put off and he stayed in jail despite all this alleged concern about his excessive pretrial incarceration. So I would suggest to you that the judge's actions speak louder than words, and that is a red herring in this case. I've got 15 seconds now. The court doesn't have any questions. Very well. Thank you for your honor, Mr. Lambert. The case is submitted and the court will file an opinion in due course. Thank you very much to both counsel.